EXHIBIT 1

## DISTRICT COURT FOR CHOCTAW COUNTY
## STATE OF OKLAHOMA

F I L E D
IN DISTRICT COURT
CHOCTAW COUNTY, OKLAHOMA

DEC 2 7 2021

Laura Sumner, Court Clerk

By _____
                                              Deputy

(1)   CATHLEEN STAPP, Special Administrator
      for the Estate of R. CRAIG STAPP,
      deceased,

              Plaintiff,

v.                                            Case No.: CJ-21-50

(2)   CITY OF HUGO, a municipal corporation,   **JURY TRIAL DEMANDED**
(3)   BILLY JENKINS, individually, and          **ATTORNEY LIEN CLAIMED**
(4)   DON DUDLEY, individually,

              Defendants.

---

### PETITION

Cathleen Stapp, as Special Administrator for the Estate of R. Craig Stapp, deceased, for this cause of action against the above-named Defendants, states as follows:

### I.

### PARTIES, JURISDICTION, VENUE

1.     Cathleen Stapp is the Special Administrator for the Estate of Craig Stapp as set forth in Choctaw County District Court, Case No. PB-2021-31.

2.     Defendant City of Hugo (City) is a municipal corporation under Oklahoma law. Upon information and belief, Hugo employed Billy Jenkins (Jenkins) and Don Dudley (Dudley) as police officers on December 23, 2019.

3.     At all times discussed in this Petition, Jenkins and Dudley were acting under color and authority of state law.

4.     The events complained of occurred in Choctaw County, Oklahoma.

5.      This Court has general subject matter jurisdiction and venue is proper.

## II.

### STATEMENT OF FACTS

6.      Estate adopts and incorporates the preceding paragraphs as if fully set forth herein.

7.      On December 23, 2019, Craig Stapp was walking southbound on North 12th Street, just south of Jackson Street in Hugo, Oklahoma.

8.      Mr. Stapp was stopped by Defendants Jenkins and Dudley who were investigating an earlier report of misdemeanor shoplifting from a nearby EZ Mart.

9.      Neither Jenkins nor Dudley were present during the alleged shoplifting; they stopped Mr. Stapp based solely upon information received from the store clerk.

10.     During the encounter with Mr. Stapp, Jenkins and/or Dudley deployed OC spray.

11.     During the encounter with Mr. Stapp, Jenkins and/or Dudley deployed a Conducted Electrical Weapon (CEW).

12.     During the encounter with Mr. Stapp, Jenkins and/or Dudley applied a chokehold on Mr. Stapp.

13.     At the time force was used, Mr. Stapp was not suspected of committing any serious crime.

14.     At the time force was used, Mr. Stapp was not an immediate risk of causing serious bodily injury to Jenkins, Dudley, or any known bystander.

15.     Upon information and belief, at the time OC spray was used, Mr. Stapp was not actively resisting Jenkins or Dudley.

16.     Upon information and belief, at the time OC spray was used on Mr. Stapp, both Jenkins and Dudley knew that OC spray is intended to and will cause immediate inflammation of the eyes and breathing passages in the target.

17.     Upon information and belief, difficulty breathing is a common and well-known complication of OC spray that every reasonably trained officer would know about.

18.     Upon information and belief, the use of OC spray was unnecessary and excessive.

19.     Upon information and belief, use of OC spray caused considerable pain and discomfort in Mr. Stapp which predictably interfered with his ability to immediately listen to and respond to commands.

20.     Upon information and belief, Jenkins and Dudley seized on Mr. Stapp's predictable reaction to OC spray to justify the contention that Mr. Stapp was "resisting" although it would be obvious to any reasonably trained officer that Mr. Stapp was only reacting to the OC spray used against him.

21.     Upon information and belief, Jenkins and/or Dudley then deployed one or more CEWs in response to Mr. Stapp's reaction to the OC spray, and not because Mr. Stapp was disobeying any commands.

22.     Upon information and belief, Jenkins and/or Dudley used the CEW in dart mode, as opposed to drive stun mode.

23.     It is well-established that use of a CEW in dart mode is a significantly more intrusive seizure than use of a CEW in drive-stun mode. Unlike use of a CEW in drive-stun mode, which is purely a pain compliance tool, use of a CEW in dart or probe mode causes neuromuscular incapacitation. "The impact is as powerful as it is swift. The electrical impulse instantly overrides

the victim's central nervous system, paralyzing the muscles throughout the body, rendering the target limp and helpless." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 725 (7th Cir. 2013).

22.    Upon information and belief, use of the CEW was unnecessary and excessive.

23.    Upon information and belief, Jenkins and/or Dudley used the CEW on Mr. Stapp knowing that he was not provided an opportunity to adequately recover from the OC spray.

24.    Upon information and belief, use of the CEW caused expected and predictable responses from Mr. Stapp, including involuntary movement, momentary paralysis, pain response, reflexive actions, and an inability to listen to and follow commands.

25.     Upon information and belief, the list of CEW complications detailed above are common and well-known such that every reasonably trained officer would know about them.

26.    Upon information and belief, Jenkins and/or Dudley seized on Mr. Stapp's predictable reaction to CEW exposure to justify the contention that Mr. Stapp was "resisting" although it would be obvious to any reasonably trained officer that Mr. Stapp's actions were involuntary and merely a response to CEW use.

27.    Upon information and belief, Jenkins and/or Dudley then applied a chokehold on Mr. Stapp with sufficient force to cause a neck fracture of right superior horn of thyroid cartilage with adjacent soft tissue hemorrhage, trauma-induced scleral congestion bilaterally, and subconjunctival hemorrhage in the lateral aspect of the right eye.



28.     A chokehold applied with sufficient force to cause a neck fracture of the right superior horn of thyroid cartilage subjects the victim to neck trauma with a substantial risk of causing death.

29.     The degree of force necessary to fracture the superior horn is described by pathologists as "significant." *See, e.g.*, *People v. Poole*, No. F077545, 2020 Cal. App. Unpub. LEXIS 4889, at *17 (July 30, 2020) ("The 'superior horn of the thyroid cartilage on the right side [was] fractured, broken.' He noted: '[I]t's significant force to cause the injury, and it's more so on the right side than on the left side.'").

30.     Other pathologists have associated fractures of the superior horns of the thyroid cartilage with manual strangulation. *See, e.g.*, *State v. Bennett*, No. 35297-8-III, 2020 Wash. App. LEXIS 1835, at *70 (Ct. App. June 25, 2020) ("Petechial hemorrhages in both eyes correlated with fractures to the superior horns of the thyroid cartilage, which Kiesel said strongly suggests manual strangulation."); *Johnson v. State*, No. 14-15-00018-CR, 2016 Tex. App. LEXIS 13305, at *4 (Tex. App. Dec. 15, 2016) ("Dr. Kathryn Haden-Pinneri, the medical examiner, testified for the State. According to Haden-Pinneri, the complainant suffered hemorrhaging in the neck area caused

by a fracture of the thyroid cartilage that occurred at or near the time of death. She testified the most likely cause of the thyroid cartilage fractures was strangulation.").

31.     It is further recognized in the field of pathology that fractures of the thyroid cartilage can cause a lack of oxygen, or separately, a stimulation of the cardioid body, which itself is capable of inducing cardiac arrest. *See*, *e.g.*, *State v. King*, 13-469 ( La. App. 3 Cir 11/08/13), 124 So. 3d 623, 629 ("Dr. Carney could not exclude neck compression because of the fractured hyoid bone and the fractured thyroid cartilage. Those fractures could have caused lack of oxygen or 'stimulation from a small organ in the neck known as the cardioid body which is capable of actually stopping the heart.'")

32.     Use of a neck restraint with sufficient force to cause a neck fracture of the right superior horn of thyroid cartilage is fairly characterized as the use of deadly force. *See*, *e.g.*, *People v. Barnes*, 2017 IL App (1st) 143902, ¶ 16, 418 Ill. Dec. 628, 635, 90 N.E.3d 1117, 1124 ("Dr. Schupp testified that the thyroid cartilage can be fractured when someone tries to choke another person. She also testified that fractured thyroid cartilage is a very rare injury because it takes a lot of force to fracture the cartilage. Dr. Schupp explained that a fractured thyroid cartilage can be a life-threatening injury.")

33.     At the time Jenkins and/or Dudley applied the deadly chokehold, Mr. Stapp did not pose an immediate threat to the officers or others.

34.     Mr. Stapp was unarmed, he had no weapon to gesture with any hostile intent, and upon information and belief, the distance separating Mr. Stapp from Jenkins and Dudley was a product of the decision-making of Jenkins and/or Dudley and was not affected by Mr. Stapp. There is no indication Mr. Stapp harbored any manifest intentions consistent with the assertion that he posed any threat of serious harm to Jenkins and/or Dudley.

35.     The totality of the facts and circumstances confronting Jenkins and/or Dudley during the police-citizen encounter with Mr. Stapp did not support the use of deadly force under clearly established law.

36.     Upon information and belief, the neck fracture caused traumatic inflammation within Mr. Stapp's neck and combined with and exacerbated the existing inflammation caused by use of the OC spray.

37.     Upon information and belief, the combined inflammation from the OC spray and the traumatic neck fracture further impaired Mr. Stapp's ability to breathe, which would predictably cause Mr. Stapp to experience immense terror and fear of suffocation and death.

38.     Upon information and belief, Mr. Stapp's condition quickly deteriorated and the lack of oxygen, or stimulation of the cardioid body, caused Mr. Stapp to suffer a fatal cardiac arrest.

39.     In response to Mr. Stapp's cardiac arrest, paramedics were summoned to the scene. Prior to their arrival, Jenkins and/or Dudley placed Mr. Stapp in restraints at the hands and feet and left in him in restraints despite knowledge that Mr. Stapp was no longer breathing.

40.     Upon information and belief, leaving Mr. Stapp in multiple restraints, knowing that he was pulseless and not breathing, would impair the effectiveness of any effort to provide CPR.

41.     The use of OC spray, a CEW, and a fracture-inducing chokehold, individually and collectively, caused injury and damages to the Estate for which these Defendants are liable.

42.     Upon information and belief, no person was disciplined for the death of Mr. Stapp.

43.     Upon information and belief, no additional training was provided due to the death of Mr. Stapp.

44.     Upon information and belief, no policies were implemented or updated as a result of the death of Mr. Stapp.

45.     Upon information and belief, no discipline issued, no training was provided, and no policies were updated because the final policymakers for the City, after reviewing the incident, approved of the use of force against Mr. Stapp, including use of OC spray, followed by use of a CEW, and combined with a fatal chokehold, all in response to a call reporting a shoplifting.

46.     Prior to death of Mr. Stapp, City knew that Jenkins had a prior history that included the use of deadly force under questionable circumstances.

47.     Specifically, City was aware that Jenkins had previously discharged his firearm numerous times into a pickup truck carrying several minor children.

48.     The shooting incident provided the City with actual knowledge that Jenkins had the capacity to use deadly force in circumstances that exhibited extreme recklessness for the life of others.

49.     That Jenkins would use deadly force again in circumstances that exhibited extreme recklessness to the rights of others was both highly predictable and plainly obvious from the fact that he had exhibited such indifference previously.

50.     With indifference to the consequences, City continued to expose people in and around Hugo to police-citizen encounters with Jenkins knowing his history of using deadly force.

### III.

### STATEMENT OF CLAIMS

51.     Estate adopts and incorporates the preceding paragraphs as if fully set forth herein, including all facts, information, and theories of recovery supported by the facts and reasonable inferences therefrom that Estate identifies throughout discovery and respectfully requests the Court

enter judgment against the Defendants on any theory of recovery supported by the facts and reasonable inferences set forth above including, without limitation, the following:

### CLAIM NO. 1

#### ASSAULT
#### STATE LAW

52.     Jenkins and Dudley, acting outside the scope of their employment, acted either with the intent of making a harmful or offensive contact with Mr. Stapp, or with the intent of putting Mr. Stapp in apprehension of such a contact; Mr. Stapp was placed in apprehension of an immediate harmful or offensive contact with his person by the conduct of Jenkins and Dudley; or Mr. Stapp was caused to suffer fright and terror for which the Defendants are liable.

### CLAIM NO. 2

#### BATTERY
#### STATE LAW

53.     Jenkins and Dudley, acting outside the scope of their employment, and without justification or the consent of Mr. Stapp, acted either with the intent of making a harmful or offensive contact with Mr. Stapp, or with the intent of putting Mr. Stapp in apprehension of such a contact. Jenkins and Dudley's actions resulted in a harmful or offensive contact with Mr. Stapp for which the Defendants are liable.

### CLAIM NO. 3

#### EXCESSIVE FORCE
#### 42 U.S.C. § 1983

54.     Jenkins and Dudley used force against Mr. Stapp, up to and including deadly force, in a manner that was objectively unreasonable under the totality of the circumstances, and in violation of clearly established law for which these Defendants are liable under 42 U.S.C. § 1983.

CLAIM NO. 4

*MONELL* LIABILITY
42 U.S.C. § 1983

55.     Estate incorporates the preceding paragraphs as if fully set forth herein and further alleges the facts and reasonable inferences drawn therefrom are consistent with the written polices, unwritten practices, training protocols, or direction from a person with final policymaking authority, which served as the moving force behind the deprivations suffered by the Estate and for which the entity Defendant is liable.

56.     City had actual knowledge that Defendant Jenkins had a prior documented history of using deadly force under circumstances where such force was not warranted. With indifference to the consequences, City continued to employ Jenkins in a capacity where it expected him to continue using deadly force.

57.     City's expectation that Jenkins use deadly force as part of his employment, combined with its knowledge that Jenkins previously used deadly force where it wasn't warranted, compelled City to act reasonably in response to the substantial risk of serious harm presented by Jenkins' decision-making.

58.     Upon information and belief, City took no action and continued allowing Jenkins to make use of force decisions with indifference to the consequences for which the City is liable under 42 U.S.C. § 1983.

59.     City also maintains official written polices or unwritten practices that authorize the use of a neck restraint under the circumstances detailed above and in the manner used by Jenkins and/or Dudley.

60.     Use of a neck restraint, as detailed above, will predictably expose people like Mr. Stapp to life-threatening neck trauma, which is an objectively serious medical condition that requires emergent medical care.

61.     As a consequence, authorizing the use of a neck restraint in these circumstances exposes people who are not a threat of causing serious bodily injury to deadly force techniques where such force is neither warranted nor authorized.

62.     Upon information and belief, City also expected that Jenkins and/or Dudley would use the life-threatening neck restraint technique described above without adequate training.

63.     City knew to a moral certainty that Jenkins and/or Dudley would use the neck restraint technique detailed above because use of the technique was an expectation of employment as a City police officer.

64.     Further, an officer's decision to apply a neck restraint presents that officer with a difficult decision of the sort that training will make less difficult because adequate training will assist the officer in understanding at least three critical issues: (a) circumstances justifying use of the neck restraint; (b) identification of the risks and complications associated with using a neck restraint; and (c) illustrating the proper techniques, arm placement, and other considerations in the proper application of the neck restraint, including (i) alternative techniques; (ii) adjusting or modifying the restraint to avoid or mitigate injury; and (iii) identification of injuries during application of the restraint and how to appropriately respond.

65.     And the wrong choice will frequently cause the deprivation of a person's rights by inflicting life-threatening trauma in circumstances where deadly force is not warranted.

## CLAIM NO. 5

### WRONGFUL DEATH
### STATE LAW

66.     The acts and omissions detailed above resulted in the wrongful death of Mr. Stapp

for which all Defendants are liable.

## IV.

### RELIEF REQUESTED

67.     Based on the foregoing, including additional facts, information, and claims

developed though discovery, Plaintiff respectfully requests the Court enter judgment in its favor

and against the Defendants, and award the following relief:

A.     Compensatory damages against all Defendants;

B.     Punitive damages against the individual Defendants;

C.     Nominal damages against all Defendants;

D.     Pre and post-judgment interest;

E.     Reasonable costs and attorney's fees;

F.     Any other relief to which Plaintiff may be entitled by law;

G.     Any other relief the Court deems just and equitable.

Respectfully submitted,

GARRETT LAW

D. Mitchell Garrett Jr., OBA #20704
320 South Boston Avenue, Suite 825
Tulsa, Oklahoma 74103
Telephone: 918-221-6190
Facsimile: 918-340-6799
mitchell@garrettlawcenter.com

12

F I L E D
IN DISTRICT COURT
CHOCTAW COUNTY, OKLAHOMA

OCT 1 1 2022

Laura Sumner, Court Clerk

By_____
                    Deputy

**DISTRICT COURT FOR CHOCTAW COUNTY**
**STATE OF OKLAHOMA**

CATHLEEN STAPP, Special Administrator )
for the Estate of CRAIG STAPP, deceased, )
    Plaintiff, )
                                 )
v.                             )   CJ-2021-50
CITY OF HUGO, a municipal corporation, )
BILLY JENKINS, individually, and )
DON DUDLEY, individually, )
                                 )
    Defendants. )

**SUMMONS**

To the above-named Defendant: City of Hugo

    You have been sued by the above-named Plaintiff, and you are directed to file a written answer to the attached petition in the court at the above address within twenty (20) days after service of this summons upon you exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the plaintiff. Unless you answer the petition within the time stated judgment will be rendered against you with the costs of the action.

    If Interrogatories and Request for Production of Documents are served with this Petition, you are directed to answer the Interrogatories and produce the documents requested within **forty-five (45) days** after service of these Interrogatories and Request for Production of Documents.

    Issued this ___19th___ day of ___Sept.___, 2022.

                                   Laura Sumner   **Court Clerk**

               by....H. Frost........, Deputy Court Clerk

(Seal)

Attorney(s) for Plaintiff(s):

Name:       GARRETT LAW
Address:    320 S. Boston Ave., Ste. 825G
          Tulsa, OK 74103
          (918)221-6190

This summons was served on . . . . . . . . . . . . . . Oct. 4, 2022 . . . . . . . . . . . . . . . . . . . . .
                         (Date of Service)

                    . . . . . . Garrett Law . . . . . . . . .
                  (Signature of person serving summons)

YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.

## DISTRICT COURT FOR CHOCTAW COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| CATHLEEN STAPP, Special Administrator | ) | |
| for the Estate of CRAIG STAPP, deceased, | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| CITY OF HUGO, a municipal corporation, | ) | CV- 2021-50 |
| BILLY JENKiNS, individually, and | ) | |
| DON DUDLEY, individually, | ) | |
| | ) | |
|     Defendants. | ) | |

## RETURN OF SERVICE

COMES NOW, Plaintiff, and shows the Court as follows:

1. On September 30, 2022, pursuant to 12 O.S. Sec 2004 (C)(2), Plaintiff's Counsel mailed the

   Petition and Summons to City of Hugo, by Certified Mail, Return Receipt Requested, delivery

   restricted to:

   > City of Hugo
   > Attn: City Clerk
   > 201 S. 2nd St.
   > Hugo, OK 74743

2. On October 4, 2022, said Process was accepted, and signed for, by Robin Seber, See Return

   Receipt attached hereto as Exhibit "A."

   Respectfully submitted,

   D. Mitchell Garrett, OBA #20704
   320 S Boston Ave, STE 825
   Tulsa, OK 74103
   Telephone (918) 221-6190
   Facsimile (918) 340-6799
   mitchell@garrett.legal
   **ATTORNEY FOR PLAINTIFF**

USPS TRACKING #

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 7530 2098 3721 23

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

*GARRETT LAW*

320 S BOSTON AVENUE
SUITE 825-G
TULSA, OKLAHOMA 74103

*Stapp*

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

City of Hugo
Attn: City Clerk
201 S. 2nd St.
Hugo, OK 74743

9590 9402 7530 2098 3721 23

2. Article Number *(Transfer from service label)*

7022 0410 0003 4822 5565

PS Form **3811**, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                        ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

Robin Sober

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted
   Delivery
☐ Signature Confirmation™
☐ Signature Confirmation
   Restricted Delivery

Domestic Return Receipt

**U.S. Postal Service™
CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

**O F F I C I A L   U S E**

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)      $ _____
☐ Return Receipt (electronic)    $ _____
☐ Certified Mail Restricted Delivery  $ _____
☐ Adult Signature Required       $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$

Total Postage and Fees
$

Postmark
Here

9/30/22

Sent To  City of Hugo, Attn: City Clerk
Street and Apt. No., or PO Box No.  201 S. 2nd St.
City, State, ZIP+4®  Hugo OK 74743

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7022 0410 0003 4822 5565

**PLAINTIFF'S
EXHIBIT**

A

DISTRICT COURT FOR CHOCTAW COUNTY
STATE OF OKLAHOMA

F I L E D
IN DISTRICT COURT
CHOCTAW COUNTY, OKLAHOMA

OCT 1 4 2022

Laura Sumner, Court Clerk
By .......................
                    Dep...

CATHLEEN STAPP, Special Administrator )
for the Estate of CRAIG STAPP, deceased, )
        Plaintiff, )
v. )
CITY OF HUGO, a municipal corporation, )       CJ - 2021-50
BILLY JENKINS, individually, and )
DON DUDLEY,  individually, )
 )
        Defendants. )

**SUMMONS**

To the above-named Defendant: Don Dudley

        You have been sued by the above-named Plaintiff, and you are directed to file a written answer to
the attached petition in the court at the above address within twenty (20) days after service of this summons
upon you exclusive of the day of service.  Within the same time, a copy of your answer must be delivered
or mailed to the attorney for the plaintiff.  Unless you answer the petition within the time stated judgment
will be rendered against you with the costs of the action.

        If Interrogatories and Request for Production of Documents are served with this Petition, you are
directed to answer the Interrogatories and produce the documents requested within **forty-five (45) days**
after service of these Interrogatories and Request for Production of Documents.

        Issued this _____19th_____ day of ____Sept._____, 2022.

                            _Laura Sumner_ **Court Clerk**

                            by. _H. Trout_ ..............., Deputy Court Clerk

(Seal)
Attorney(s) for Plaintiff(s):

Name:          GARRETT LAW
Address:       320 S. Boston Ave., Ste. 825G
               Tulsa, OK 74103
               (918)221-6190

This summons was served on .. _October 5th 2022_ ..................................
                            (Date of Service)

                            .... _Garrett Law_ ...........
                            (Signature of person serving summons)

YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS
SUIT OR YOUR ANSWER.  SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO
THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.

## DISTRICT COURT FOR CHOCTAW COUNTY
## STATE OF OKLAHOMA

CATHLEEN STAPP, Special Administrator )
for the Estate of CRAIG STAPP, deceased, )
    Plaintiff, )
v. )
CITY OF HUGO, a municipal corporation, )   CV- 2021-50
BILLY JENKINS, individually, and )
DON DUDLEY, individually, )
 )
    Defendants. )

## RETURN OF SERVICE

COMES NOW, Plaintiff, and shows the Court as follows:

1. On September 30, 2022, pursuant to 12 O.S. Sec 2004 (C)(2), Plaintiff's Counsel mailed the

Petition and Summons to Don Dudley, by Certified Mail, Return Receipt Requested, delivery

restricted to:

       Don Dudley
       3270 E. 1980 Rd.
       Spencerville, OK 74760

2. On October 5, 2022, said Process was accepted, and signed for. See Return Receipt attached

hereto as Exhibit "A."

       Respectfully submitted,

       _____
       D. Mitchell Garrett, OBA #20704
       320 S Boston Ave, STE 825
       Tulsa, OK 74103
       Telephone (918) 221-6190
       Facsimile (918) 340-6799
       mitchell@garrett.legal
       **ATTORNEY FOR PLAINTIFF**



First Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 7530 2098 3721 47

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

*GARRETT LAW*

320 S BOSTON AVENUE

SUITE 825-G

TULSA, OKLAHOMA 74103

Stapp

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Don Dudley
3270 E. 1980 Rd.
Spencerville, OK 74160

9590 9402 7530 2098 3721 47

2. Article Number *(Transfer from service label)*

7022 0410 0003 4822 5558

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X DW HCCGP

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

DW HCCGP

C. Date of Delivery

10 5.22

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Postage and Fees
$

9/30/22

Sent To    Don Dudley

Street and Apt. No., or PO Box No.
3270 E. 1980 Rd.

City, State, ZIP+4®
Spencerville, OK 74160

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions



7022 0410 0003 4822 5558

**PLAINTIFF'S EXHIBIT**

A

tabbies®

F I L E D
IN DISTRICT COURT
CHOCTAW COUNTY, OKLAHOMA

OCT 1 7 2022

Laura Sumner, Court Clerk

By_____
                    Deputy

**DISTRICT COURT FOR CHOCTAW COUNTY**
**STATE OF OKLAHOMA**

CATHLEEN STAPP, Special Administrator )
for the Estate of CRAIG STAPP, deceased, )
    Plaintiff, )
     )
v. )
CITY OF HUGO, a municipal corporation, )
BILLY JENKINS, individually, and )
DON DUDLEY, individually, )
     )
    Defendants. )

CJ- 2021-50

*COPY*

## SUMMONS

To the above-named Defendant: Billy Jenkins

    You have been sued by the above-named Plaintiff, and you are directed to file a written answer to the attached petition in the court at the above address within twenty (20) days after service of this summons upon you exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the plaintiff. Unless you answer the petition within the time stated judgment will be rendered against you with the costs of the action.

    If Interrogatories and Request for Production of Documents are served with this Petition, you are directed to answer the Interrogatories and produce the documents requested within **forty-five (45) days** after service of these Interrogatories and Request for Production of Documents.

    Issued this ___19th___ day of ___Sept___, 2022.

                           Laura Sumner **Court Clerk**

                           by............................, Deputy Court Clerk

(Seal)

Attorney(s) for Plaintiff(s):

Name:     GARRETT LAW
Address:   320 S. Boston Ave., Ste. 825G
            Tulsa, OK 74103
            (918)221-6190

This summons was served on . . . . . . . . . . . . . . . . 10/12/2022 . . . . . . . . . . . . . . . . .
                                (Date of Service)

                         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                         (Signature of person serving summons)

YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.

## AFFIDAVIT OF SERVICE

| Case: CJ-21-50 | Court: DISTRICT COURT OF CHOCTAW COUNTY STATE OF OKLAHOMA | County: CHOCTAW, OK | Job: 7787069 |
|---|---|---|---|
| Plaintiff / Petitioner: CATHLEEN STAPP | | Defendant / Respondent: CITY OF HUGO ET AL,, | |
| Received by: Hendrickson Legal Services | | For: GARRETT LAW | |
| To be served upon: BILLY JENKINS | | | |

I, Austen Hendrickson, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:   MARGARET JENKINS, 2986 E 69TH ST, TULSA, OK 74136

Manner of Service:   Substitute Service - Abode, Oct 12, 2022, 7:37 am CDT

Documents:   SUMMONS AND PETITION

Additional Comments:
1) Unsuccessful Attempt: Oct 11, 2022, 4:48 pm CDT at 2986 E 69TH ST, TULSA, OK 74136
No answer

2) Successful Attempt: Oct 12, 2022, 7:37 am CDT at 2986 E 69TH ST, TULSA, OK 74136 received by MARGARET JENKINS. Relationship: Wife; Subserved to wife at the listed address. She is stating that this is not the correct Billy Jenkins as this Billy Jenkins has never worked for the city of Hugo.

_____    10/12/2~
Austen Hendrickson         Date

Hendrickson Legal Services
1732 SW. BLVD
TULSA, OK 74701
9189448873

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary

Date

GINA CASH
Notary Public in and for
STATE OF OKLAHOMA
Commission #22000971
Expires: 22 Jul 2026